# DISTRICT OF COLUMBIA *v.* FLAGG.

EVIDENCE; CUSTOM; NEGLIGENCE; ACTION; PARTIES; TRIAL; EXCLUSION OF
WITNESSES FROM COURT ROOM.

1. Evidence of the custom as to the length of time boilers were used without
   cleaning should be admitted in evidence in an action to recover for
   injuries to a servant by the explosion of one of them, upon the
   ground that it was defective, when offered by the defendant to meet
   the plaintiff's testimony that there was no regular time for cleaning
   them, that they ran anywhere from two to three months without
   cleaning, and that the plaintiff, although he had never known of an
   explosion in the defendant's plant, had seen the boiler tubes so bad
   that they could not hold steam; and such evidence cannot be ex-
   cluded upon the theory that since but one boiler was involved, and
   the parties stipulated as to the length of time it had been in use since
   cleaning, evidence as to the general custom was incompetent. (Mr.
   Justice ROBB dissenting.)

2. In personal injury cases, this court has announced a strict rule in
   requiring the question of negligence to be submitted to the jury.
   (Citing *Barstow* v. *Capital Traction Co.* 29 App. D. C. 362; *Capital*
   *Traction Co.* v. *Divver*, 33 App. D. C. 332; *Capital Traction Co.* v.
   *Apple*, 34 App. D. C. 559; and *Capital Traction Co.* v. *Crump*, 35
   App. D. C. 169.)

3. A representative of the District of Columbia who sits at the counsel
   table during the trial of an action to which the District is a party is
   a litigant in such a sense as to make him immune from exclusion
   from the court room, and therefore it is error to reject his testimony
   upon the ground that he remained in violation of an order excluding
   witnesses. (Mr. Justice ROBB dissenting.)

4. A witness who disobeys an order excluding witnesses from the court
   room, although subject to contempt proceedings, is not thereby dis-
   qualified from testifying except in extreme cases, and where it ap-
   pears that no injustice will result from rejecting the testimony.

5. Before rejecting the testimony of a witness who remained in the court
   room in violation of an order excluding witnesses, the court should
   inquire into the circumstances of such violation, and unless it ap-
   pears that the witness acted by the advice or with the collusion of the

party in whose favor he was to testify, his testimony should be received.

No. 2599.　Submitted January 8, 1914.　Decided April 6, 1914.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action to recover damages for personal injuries. *Reversed.*

The facts are stated in the opinion.

*Mr. C. H. Syme,* Corporation Counsel, and *Mr. Roger J. Whiteford,* Assistant, for the appellant.

*Mr. Ralph B. Fleharty* and *Mr. Charles H. Merillat* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This is an appeal from a judgment in favor of appellee, Walter P. Flagg, plaintiff below, in a suit brought against the District of Columbia to recover damages for personal injuries received as the result of the explosion of a boiler at the Bryant street pumping station in this District. At the time of the accident, plaintiff was employed by the defendant as a laborer and boiler cleaner at the pumping station. It was his duty, among other things, to clean the boilers and connecting tubes when any one of the six boilers was out of use for this purpose. According to plaintiff's testimony, about 1 o'clock on the day of the accident, he was directed by the chief engineer to repair the coal chute, the top of which was about 12 feet above the floor of the building. The chute was square and slanted down into a round tube through which the coal was conveyed to the furnaces. Plaintiff was on top of the chute engaged in repairing it when the explosion occurred, and he was precipitated to the floor below, receiving the injuries complained of in this suit.

Counsel for the District assign error in that the court, on objection of counsel for plaintiff, refused to permit the chief

engineer of the water department of the District, a witness for defendant, to answer the following question: "How long had it been the custom, if there is a custom, to run a boiler out there without putting it out of service and cleaning it?" This was offered to rebut the following testimony by plaintiff: "There was no regular time for cleaning the boilers; they ran all the way from two to three months without cleaning. Plaintiff never knew of any explosion while he was employed at the pumping station, but had seen the tubes so bad that they could not hold steam." The crucial issue in this case was whether or not the tubes were maintained and used in a defective condition. The above testimony on behalf of plaintiff was both damaging and material as tending to establish the negligent conduct of defendant's agents, which, it was alleged, contributed directly to the accident. It was reversible error to refuse defendant the right to meet this evidence by material testimony which it was seeking to elicit by the question objected to and ruled out by the court. It is difficult to understand upon what theory this evidence was rejected.

It has been suggested that, inasmuch as the case was limited to the condition of boiler No. 4, and it was stipulated as to the length of time it had been in operation since it was cleaned, it was incompetent to attempt to prove a custom. We think evidence of general custom in the operation of these boilers was admissible as bearing upon the question of negligence, since there was much evidence to the effect that the tubes of this particular boiler were in a defective condition when it was last cleaned and put into service. However, the competency of this evidence is not important, since the inquiry was first made by plaintiff. He could not open up this field of investigation, and, after having fully explored it himself, close the door against his adversary. The evidence was material, and, if the inquiry was unduly broadened, the responsibility, rests with the plaintiff.

In personal injury cases, this court has announced a strict rule in requiring the question of negligence to be submitted to the jury. *Barstow* v. *Capital Traction Co.* 29 App. D. C. 362; *Capital Traction Co.* v. *Divver,* 33 App. D. C. 332; *Capital*

·*Traction Co.* v. *Apple,* 34 App.. D. C. 559; *Capital Traction Co.* v. *Crump,* 35 App. D. C. 169. To judicially deprive the. District of the benefit of this evidence, which goes directly to the question of negligence imputed to it, and upon which plaintiff can alone recover, would be an unwarranted invasion of the prerogatives of the jury. As was said by Mr. Justice Robb in the *Barstow Case,* supra, where the issue of negligence on the part of the corporation against which the liability was sought to be established was exceedingly close: "The jury system is the law of the land, and disputed questions of fact arising out of the manifold relations of men are not to be determined by the court as matter of law, but are to be submitted to the jury,— the tribunal whose special function it is to pass upon such questions. The wisdom of this system, and the danger encountered in departing from it, are everyday apparent. It is a protection to the weak and to the strong alike, and, as long as it maintains, respect for the law will continue, because the verdict of the jury is usually the reflection of public sentiment. Experience has demonstrated that, however learned in the law he may be, and however conscientious he may be, a judge, being removed from the practical affairs of life, is less qualified to determine questions of fact than twelve men taken from the everyday walks of life."

Not so important, since the evidence was perhaps cumulative, but equally erroneous, was the refusal of the court to permit the witness Bradshaw to testify, upon the ground that he had remained in the court room in violation of an order of court excluding the witnesses from the court room during the trial. It was stated at bar, and not controverted, that he was at the counsel table during the trial as the representative of the District. It is always improper to exclude a litigant, and we think the same rule should apply to the representative of a corporation. *Heaton* v. *Dennis,* 103 Tenn. 155, 52 S. W. 175; *Lenoir Car Co.* v.·*Smith,* 100 Tenn. 127, 42 S. W. 879; *Cottrell* v. *Cottrell,* 81 Ind. 87. But in this jurisdiction a witness is not disqualified for violating an order of exclusion from the court room. "If a witness disobeys the order of withdrawal, while he may be proceeded against for contempt, and his testimony is

open to comment to the jury by reason of his conduct, he is not thereby disqualified, and the weight of authority is that he cannot be excluded on that ground merely, although the right to exclude under particular circumstances may be supported as within the sound discretion of the trial court." *Holder* v. *United States,* 150 U. S. 91, 37 L. ed. 1010, 14 Sup. Ct. Rep. 37.

It is undoubtedly true that an instance might arise, as suggested in the case just cited, where the court would be justified in refusing to permit such a witness to testify, but it is the exception to the rule, and should be exercised only in an extreme case, and where it clearly appears that no injustice will result. Before excluding a witness in any case, the court should inquire into the circumstances of the violation of the order, and unless it appears that the witness acted by the advice or collusion of the litigant on whose behalf he is to testify, he should not be excluded.

The judgment is reversed with costs, and the cause is remanded for a new trial.          *Reversed* and *remanded.*

Mr. Justice Robb dissenting:

The explosion was on October 6, 1910, and in boiler No. 4. It was stipulated by counsel for the respective parties that this boiler "was taken out of service June 30, 1910, and put back in service September 19, 1910." The question therefore was whether this boiler, when put back in service, was in proper condition. Whatever the custom or rule of the District may have been, for custom is nothing more than a rule, it was entirely immaterial in my view, unless that custom or rule was adhered to in the present case. In other words, the witness should have been asked to state how often in fact the boilers were put out of service and cleaned. It is significant that this question was not asked. That the court's ruling was based upon the form of the question is apparent from what followed, for the same witness was permitted to testify that during the time boiler No. 4 was out of commission, that is from June 30 to September 19, 1910, "six boilers, each of them having ninety tubes, had been put out of commission," for the purpose, of course, of be-

ing cleaned. It is inconceivable that counsel for the District should have failed to understand that they would be permitted to show, as a matter of fact, when and how often boilers were put out of commission for the purpose of being cleaned. It is apparent, I think, that, had the witness been permitted to answer the question as propounded, his answer might have been very misleading, for the custom or rule may have been, and probably was, violated in this case, and perhaps in others.

Little need be said as to the second question. Counsel for the District in the argument at bar asserted that the presence of the witness Bradshaw in the court room was necessary to assist them in the defense. There is not a line in the record to indicate that any effort was made to obtain the consent of the court to have this witness present, and, in view of the ruling excluding his testimony, we must assume that the court found that the presence of the witness was not only in violation of its order, but that counsel for the District were not entirely blameless in the matter. Witnesses were excluded in the interest of justice, and to permit one party knowingly to disobey the order of exclusion, and then take advantage of that disobedience, would militate against the authority of the court and be subversive of justice. The judgment below should be affirmed.

Thereafter the appellee moved for a rehearing suggesting a diminution of the record and applying for a writ of certiorari to the lower court. On April 28, 1914, the motion for a rehearing and the application for the writ of certiorari were denied.